(71 Misc. Rep. 182.)

### LERNER v. TETRAZZINI.

(Supreme Court, Special Term, New York County. March, 1911.)

CONTRACTS (§ 10*)—VALIDITY—MUTUALITY.

A contract whereby a singer agrees to give her services for a certain period for certain compensation in different places, but with no agreement on the part of the other party to employ her at any time during the whole term of the contract, or to pay her any certain sum, is void for want of mutuality.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

Action by Isador Lerner against Luisa Tetrazzini. On motion for judgment on the pleadings. Granted.

Affirmed 129 N. Y. Supp. 1132.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Rogers & Rogers, for plaintiff.
Towne & Spellman, for defendant.

GERARD, J. By a motion for judgment on the pleadings the sufficiency of the complaint is attacked. On the 8th of January, 1904, plaintiff, a threatrical impresario, entered into a contract with defendant, which, among other things, provided as follows:

"The undersigned manager contracts Mme. Louise Tetrazzini to perform in the theaters of the United States and Canada, where she will be bound to give her services in all kinds of musical entertainments that may be ordered by the management. The artist binds herself to be ready to embark on the 23d day of February, 1904, from the city of Havana in the vessel that may be designated by the management. The present contract shall have a duration of six months and will take effect five days after arrival, unless the début takes place before; but the artist binds herself to attend all the rehearsals that may be ordered by the management, even previously to the début. The manager binds himself to pay to the artist (payable at the end of each performance) a salary of five hundred (500) dollars in gold coin per performance. It is agreed that during the days employed in traveling from one city to another the artist's salary will be suspended from the day following the last performance in one city to the day on which the first performance takes place in the new city. The artist binds herself to perform in three performances per week and in not more than two consecutive performances. The artist binds herself to appear punctually at the hour appointed for all performances that may be ordered, and to perform without any extra compensation in the matinées on the understanding that she will not in such cases be obliged to appear in the night performances. Besides the repertoire above given, the artist binds herself to sing in one new opera, which is adapted to her voice, and will be allowed a term of 12 days within which to learn such new opera. In the event of the artist not complying with this engagement, by not being ready to start on the day that may be ordered, or not rendering the services above agreed upon, she hereby binds herself to pay to the management the total amount of the payment agreed upon, not as a penalty, but as liquidated damages for the injury which the management may suffer in its interests; this being an essential condition, without which the present contract would not have been made. In the event of the artist falling sick in such a way as to prevent her starting, such sickness must be certified to by a physician, who will be appointed by the management at the request of the artist. otherwise, the excuse will not be accepted. All cases of unforeseen accidents will be in favor of the management, such as fire in the theater, war, revolution, siege. epidemics, public accidents, the closing of the theater in spite of the protest of the management, whenever such cases happen in any of the cities in which the artist has to perform, and in the cases above cited the artist's salary will be settled in proportion to the performances in which she has actually appeared, and the management will be refunded the balance of any sum that may have been advanced to the artist, and the present contract will become null and void. In the event of the artist falling sick as certified to by the physician of the theater, and so continuing for four separate or consecutive days, the management will have the power to take the following steps: (a) To retain her salary in proportion to the time during which she has been able to render services; (b) to make a new arrangement; (c) to cancel the present contract. The management reserves to itself the right to give one or two benefit performances in the name of the artist without giving her any extra compensation."

The defendant claims that this contract is void for want of mutuality. I am of this opinion. Suppose Tetrazzini were suing on the contract. What employment was the plaintiff bound to give her? There is nowhere any obligation on the part of plaintiff to employ Tetrazzini any given number of times in any one week, or even during the whole term

of the contract, which is cleverly devised for the benefit of plaintiff alone. This point was decided in Shubert v. Coyne (Sup.) 115 N. Y. Supp. 968, by Mr. Justice Bischoff, when he said:

"The contract in suit obligated the defendant to hold himself at the plaintiff's disposal during the theatrical season of each year, to be fixed by the latter, and provided for his remuneration as follows: 'Second. The party of the first part agrees to pay to the party of the second part for such services when satisfactorily rendered to the party of the first part, and upon compliance by the party of the second part with the conditions of this agreement, for each and every week that he shall actually publicly appear and perform, the sum of $300 per week.' The use of the word 'actually' in this clause necessarily so limited the defendant's right to his compensation that the contract was of no value to him in the event of the plaintiff's failure to call for his services, and while he was forbidden by the agreement from performing such services in his profession as an actor for any other person, he, in his turn, could not require the plaintiff to employ or pay him. For the purposes of an action such as this, in which an injunction is sought, to the end that defendant may specifically perform, the plaintiff must show that the contract sought to be enforced is fair and reasonable, and the court will not direct specific performance of an agreement that is wholly one-sided, and, from its very character, lacking mutuality. Lawrence v. Dixey, 119 App. Div. 296, 104 N. Y. Supp. 516. The relief sought by injunction pendente lite would afford the plaintiff the full remedy of specific performance which could be obtainable by final judgment, and the case presented is not of sufficient probable merit to justify the granting of the application. Motion denied, with $10 costs."

See, also, Dockstader v. Reed, 121 App. Div. 846, 106 N. Y. Supp. 795.

Coghlan v. Stetson (C. C.) 19 Fed. 727, cited by plaintiff, is not in point, for in that case it was plain that the actor was employed for a definite period and was to receive $100 for each performance, seven performances to constitute a week's business, the actor to receive $100 for each performance in which he should appear. Construing the latter clause, the court said:

"The plaintiff was to be paid for the seven performances, but for no more, unless he actually appeared in more. The clause referred to was also a wise provision, in case the plaintiff through sickness or otherwise neglicted to appear."

But in the contract before us there is no mutuality. Plaintiff was not bound to pay defendant any certain sum, or to give her any certain number of appearances, and therefore the contract is void for the want of mutuality.

Motion granted, with costs. Settle order on notice.

Motion granted.